UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

JISTZMAR ARROYO RODRIGUEZ,                                    Petitioner,

v.                                                           Civil Action No. 4:25-cv-168-RGJ

JASON WOOSLEY, Jailer, Grayson County Jail;
SAMUEL OLSON, Interim Field Office Director,
Chicago Field Office, U.S. Immigration and
Customs Enforcement.

                                                             Respondents.

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Jistzmar Arroyo Rodriguez's Writ of Habeas
Corpus. [DE 1]. Respondents responded on December 11, 2025. [DE 9]. Petitioner replied on
December 15, 2025. [DE 10]. The Parties agreed that an evidentiary hearing is unnecessary. [DE
7; DE 8]. This matter is ripe for adjudication. For the reasons below, the Court **GRANTS**
Rodriguez's Petition for a Writ of Habeas Corpus. [DE 1].

**I.       BACKGROUND**

Petitioner Jistzmar Arroyo Rodriguez, ("Rodriguez") is a native and citizen of Venezuela.
[DE 1 at 3-4]. She has been present in the United States since May 1, 2023.[1] [*Id.*]. After arrival,
she was served a Form I-862 Notice to Appear on May 19, 2023, although the form is dated May
17, 2025. [DE 9-1 at 60-62]. An asylum officer then found she had demonstrated a credible fear

---

[1] Both Parties stipulate that Rodriguez entered "without inspection." [DE 1 at 1 ("[s]he entered the U.S.
without inspection around May 2023"); DE 9 at 45 ("[s]he entered the United States without inspection")].
The Form I-862 Notice to Appear specifically states that "[y]ou entered the United States at an unknown
location on or about May 1, 2023; [ ] You were not then admitted or paroled after inspection by an
Immigration Officer." [DE 9-1 at 60. As a result, while it does not appear that she "evaded" inspection, the
clear language of the form indicates that she surrendered to CBP at a location not designated for
admission, and thus, has not been legally inspected. [*Id.* at 60 (citing INA 212(a)(6)(A)(i))]. This is also
consistent with the fact that she was not designated as an arriving alien on the I-862. [*Id.*].

1

of persecution or torture, resulting in her parole into the United States for a one-year period. [*Id;* DE 9-2 at 64]. On January 21, 2025, Rodriguez filed, and was subsequently approved, for Temporary Protected Status. [DE 9 at 40]. This is a discretionary decision by the United Stats Citizenship and Immigration Services ("USCIS") division of the Department of Homeland Security ("DHS"). 8 C.F.R. § 244.10(b). However, Rodriguez's Temporary Protected Status was terminated on October 3, 2025. [DE 9 at 41]; *See Noem v. Nat'l TPS All.*, 606 U.S. ____ (2025). On October 29, 2025, Rodriguez was arrested by Immigration and Customs Enforcement ("ICE") officials and provided a Form I-200 Warrant for Arrest of Alien. [DE 9-4 at 70]. Additionally, as stated, Rodriguez was previously issued a Form I-862 Notice to Appear, which marked her as an "alien present in the United States who has not been admitted or paroled." [DE 9-1 at 60]. Since her arrival, Rodriguez has not had any criminal or civil charges and has remained compliant with all ICE directions and communications. [DE 1 at 4].

Per the Form I-200 Warrant for Arrest, Rodriguez has been detained under "the authority contained in Section 236" of the INA. [DE 9-4 at 70]. INA Section 236 is codified at 8 U.S.C. § 1226 ("Section 1226"). Under Section 1226, noncitizens have a right to a custody determination or bond hearing reviewed by an IJ. *See* 8 U.S.C. § 1226; 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Additionally, Rodriguez's Notice to Appear classifies her as "an alien present in the United States who has not been admitted or paroled." [DE 9-1 at 60]. Not as an "arriving alien." [*Id.*]. Rodriguez is currently in standard removal proceedings. [DE 1 at 1].

ICE contends that based on interim guidance from DHS, issued July 8, 2025, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission," only those noncitizens who have already been admitted into the United States are eligible to be released during removal proceedings and all other noncitizens are subject to mandatory detention, under 8 U.S.C. § 1225

("Section 1225"), not Section 1226 ("Section 1226"). [DE 1 at 4]. This is a reversal of ICE's longstanding policy. [*Id.*].

Rodriguez asserts that the United States illegally detained her under Section 1225 instead of Section 1226. [*Id.* at 6-7]. And that this detention is in violation of her Due Process Rights under the Fifth Amendment. [*Id.* at 12-13]. Therefore, Rodriguez seeks release from her detention, or in the alternative, to hold a bond hearing before a neutral IJ to determine whether she should remain in custody. [*Id.* at 16].

In response, the United States makes three contentions. First, this Court has no jurisdiction to review the Habeas challenge. [DE 9 at 41]. Second, Rodriguez is properly detained pursuant to Section 1225, not Section 1226. [*Id.* at 44]. And third, Rodriguez has been afforded all due process that is owed. [*Id.* at 56].

## II.    JURISDICTION

District courts have jurisdiction only where Congress has provided. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The limits of this Court's jurisdiction are "not to be expanded by judicial decree." *Id.* A district court may grant a writ of habeas corpus to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Although the Court "may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

The United States claims that "8 U.S.C. § 1252(b)(9) strips the Court of jurisdiction to review Petitioner's habeas claims as the petition requires the Court to answer legal and factual questions 'arising from any action taken or proceeding brought to remove . . . ' her." . [DE 9 at 41

(quoting 8 U.S.C. § 1252(b)(9))].[2] Rodriguez reiterates that she is not challenging her removal proceedings but instead is solely challenging her "detention" and thus, this Court has jurisdiction to review her petition. [DE 10 at 77].

In *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020), the Supreme Court held that § 1252(b)(9) "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined'" (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294-95 (2018)).[3]

Here, Rodriguez's petition for habeas challenges her detention, not the removal or proceedings. [DE 10 at 77]. Rodriguez seeks release from an unlawful detention, not any judgment on the removal itself. [*Id.*]. Because she challenges the statutory and constitutional validity of her continued detention, § 1252(b)(9) does not bar jurisdiction and review of Rodriguez's petition is appropriate.

---

[2] Despite numerous decisions to the contrary in this District and across the country, the United States continues to assert that this Court does not have jurisdiction under 8 U.S.C. § 1252(b)(9). The Court has located no decision to the contrary and the United States cites none. The Court has previously cited numerous decisions from around the country finding jurisdiction proper. *See Edahi v. Lewis, et al.* No. 4:25-CV-129-RGJ, 2025 WL 3466682, at *3 (W.D. Ky. Nov. 27, 2025). Further, in the United States brief to the Sixth Circuit on a similar 1225/1226 issue, the United States asserts that the "district court had jurisdiction under 28 U.S.C. §§ 1331 and 2241." Brief for Respondent at 13, *Pizzaro Reyes v. Raycraft*, No. 25-1982 (6th Cir. Nov. 21, 2025). As such, continuing to maintain this position is not in keeping with the Respondents obligations of candor to the Court.

[3] Although the United States does not argue that Section 1252(g) bars jurisdiction, the Supreme Court has rejected that Section 1252(g) is similarly narrow. That provision limits review of cases "arising from" decisions "to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The Supreme Court rejected the suggestion that § 1252(g) covers "all claims arising from deportation proceedings" or imposes "a general jurisdictional limitation." *Reno v. American-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999). "A claim of unlawful detention does not arise from the commencement of removal proceedings 'within the meaning of § 1252(g) simply because the claim[ ] relate[s] to that discretionary, prosecutorial decision.'" *Alonso v. Tindall*, 2025 WL 3083920, at *2 (W.D. Ky. Nov. 4, 2025) (quoting *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025)).

### III.    Exhaustion of Remedies

Neither party asserted any exhaustion-related arguments and no applicable statute or rule mandates exhaustion. However, because many decisions in similar cases by district court within the Sixth Circuit discuss this principal, the Court incorporates its analysis on exhaustion of remedies from a previous case, *Edahi,* 2025 WL 3466682, at *3, and the Court waives the exhaustion requirement for the same reasons.

### IV.    DISCUSSION

#### A.  Section 1225 vs. Section 1226

The United States argues Section 1225 applies to Rodriguez's detention, not Section 1226.

> 1.    The Statutory Language.

The first statute, 8 U.S.C. § 1225 titled "Inspection by immigration officers;[4] expedited removal of inadmissible arriving aliens; referral for hearing" states, in pertinent part,

**(b) Inspection of applicants for admission**
    **(2) Inspection of other aliens**

> **(A) In general**
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a) of this title.

---

[4] Immigration Officers are defined as "any employee or class of employees of the Service or of the United States designated by the Attorney General, individually or by regulation, to perform the functions of an immigration officer specified by this chapter or any section of this title." 8 U.S.C. § 1101(a)(18). "Inspection" is not defined by statute but U.S. Customs and Border Patrol states, "[t]he inspection process includes all work performed in connection with the entry of aliens and United States citizens into the United States, including pre-inspection performed by the Immigration Inspectors outside the United States." U.S. CUSTOMS & BORDER PATROL, *Immigration Inspection Program*, (Mar. 6, 2024) https://www.cbp.gov/border-security/ports-entry/overview.

8 U.S.C. § 1225(b)(2)(A). For purposes of this provision, "an alien who is an applicant for admission" is defined as an "alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1).

The second provision, 8 U.S.C. § 1226, titled "Apprehension and detention of aliens" states:

> **(a) Arrest, detention, and release**
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>> (1) May continue to detain the arrested alien; and
>> (2) May release the alien on—
>>> (A) Bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General ...

8 U.S.C. § 1226(a).

Under Section 1225(a)(1) "applicants for admission," are noncitizens "present in the United States who [have] not been admitted." Section 1225(a)(1). Under subsection (b), certain 'applicants for admission' may be subject to removal proceedings. *Dep't of Homeland Sec. v. Thuraissigam*, 591 U.S. 103, 108-09 (2020). "Admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Section 1225, with limited exception, has a mandatory detention provision. Section 1225(b)(2)("if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a . . .") (emphasis added). Noncitizens detained under Section 1225(b)(2) may be released only if they are paroled "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

6

Section 1226 authorizes "the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2019). Section 1226(a) creates a discretionary framework for noncitizens arrested and detained upon an arrest "warrant issued by the Attorney General." Section 1226(a). The Attorney General "may continue to detain the arrested alien," "may release the alien" on bond of at least $1,500 or "may release the alien" on parole. *Id.* The arresting immigration officer makes an initial custody determination. 8 C.F.R. §§ 1236.1(c)(8), (d)(1). However, noncitizens can appeal that determination in a bond hearing before an IJ. *Id.*

Congress recently amended Section 1226(c). Through the Laken Riley Act, Congress added two new mandatory provisions to the general discretionary framework of Section 1226. Now, as codified in Section 1226(c), the Attorney General must detain a noncitizen if (i) the noncitizen is inadmissible because they are in the United States without being admitted or paroled, obtained documents for admission through misrepresentation or fraud, or lacks valid documentation or, "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." Section 1226(c)(1)(E)(i)-(ii).

To summarize, if detained under Section 1225(b)(2)(A), the noncitizen must remain in custody for the duration of their removal proceedings, but if detained under Section 1226, the noncitizen is entitled to a bond hearing before an IJ. *Rodriguez v. Bostock*, 779 F. Supp.3d 1239, 1247 (W.D. Wash. 2025). Section 1225 essentially "supplement[s]" Section 1226. *Rodriguez Disa v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

2.    <u>Statutory Application to Rodriguez.</u>

As an initial matter, the detention papers and arrest warrant both state that Rodriguez was detained and arrested pursuant to Section 1226 as they were provided via Form I-200. [DE 9-4 at 70]. Arrest Warrants, Form I-200s, are only found within Section 1226 and its implementing regulations, 8 C.F.R. § 236. This statutory authority requires a bond hearing.

Regardless, the United States contends that Rodriguez is not only an applicant for admission but is also "seeking admission" pursuant to Section 1225(b)(2)(A) and therefore is subject to the mandatory detention provision of Section 1225(b)(2)(A). [DE 9 at 45]. The question before the Court is whether "an alien present in the United States who has not been admitted" includes someone like Rodriguez, who is not presently seeking admission but has been in the United States for at least two years without inspection. In other words, the Court must decide whether Rodriguez, who may be an "applicant for admission" and who was detained pursuant to a Form I-200 arrest warrant, is also "seeking admission" pursuant to Section 1225(b)(2)(A). The United States contends she is. [DE 9 at 45]. If so, she would be placed in mandatory detention under Section 1225(b)(2)(A) and her habeas petition would be denied. [*Id.*]. If not, then she has been "arrested and detained pending a decision on whether [she] is to be removed from the United States" pursuant to Section 1226(a). Petitioner contends that Section 1226 should control. [DE 1 at 4-5]. She further contends that because Section 1226 controls, her Fifth Amendment due process rights have been violated and she should be entitled to the full due process under the law. [*Id.* at 12-13]; *Maldanado v. Baker,* 2025 WL 2968042, at *9-10 (D. Md. Oct. 21, 2025).

When interpreting statues, "the inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (internal quotes omitted). However, ambiguity is not determined by examining provisions in

isolation. *Rodriguez v. Noem*, No. 1:25-CV-1196, 2025 WL 3022212, at \*5 (W.D. Mich. Oct. 29, 2025). "[T]he 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012). This Court must also "use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024).

"It is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walke*, 533 U.S. 167, 174 (2001)). "[E]very clause and word . . . should have meaning." *United States, ex rel. Polansky v. Exec. Health Res., Inc.,* 599 U.S. 419, 432 (2023) (internal quotation marks and citation omitted). This includes titles and section headings. *See Dubin v. United States*, 599 U.S. 110, 120-21 (2023). "[A] title is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring)).

### i. The Title and Statutory Scheme.

Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The added word of "arriving" supports the notion that the statute governs "arriving" noncitizens, not those present already. This is further reinforced by the text of the statute itself, which is focused on inspections for noncitizens when they arrive via "crewman" or as "stowaways." 8 U.S.C. § 1225(b)(2)(B)(i)-(iii) ("who is a crewman. . . who is a stowaway."). This limited, and more specific methods of entry suggest that

Section of 1225(b)(2) is limited to noncitizens arriving at a border or port, being inspected by an immigration officer, *and are presently* "seeking admission" into the United States. *Pizarro Reyes*, 2025 WL 2609425, at *5 (citing to *Dubin*, 599 U.S. at 118 (2023)). As a result, Section 1225(b)(2) is more limited in scope than the United States asserts. *Id.* Further, Section 1225's implementing regulation is found in 8 C.F.R. § 235, which is titled "Inspection of Persons Applying for Admission." The language in the first part of the regulation, 8 C.F.R. § 235.1, states that "[a]pplication to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection . . ." This language also supports Section 1225 being about the inspection process *on arrival at a port of entry* for individuals presenting themselves for examination before an immigration officer.

The title is also divided into sections which are separated by semicolons. The first phrase is "inspection by immigration officer." According to the United States, Rodriguez entered into the United States "without inspection." [DE 9 at 45]. Next, the part of the heading specifying "expedited removal" specifically includes the words "arriving aliens." Rodriguez is already in the country, and has been for more than two years, and thus is not arriving.[5] And the last phrase, "referral for hearing," is also inapplicable to Rodriguez as she was not referred to any hearing upon her detention. [DE 1 at 4-6]. Instead, Rodriguez was issued the Form I-862 shortly after her arrival, which is the administrative document used to provide the written notice requested by 8 U.S.C. § 1229(a). [DE 9-1]. Under 8 U.S.C. § 1229(a), the government must provide a "notice to appear" to start removal proceedings under section 1229a (also known as INA § 240 proceedings). Form I-862 is the physical form that fulfills this requirement. While DHS issues the form, legal proceedings under 1229 only officially commence when the I-862 is filed with the Immigration

---

[5] This is also consistent with her I-862 which does not check the box for "arriving alien," but instead for "alien present in the United States who had not been admitted or paroled." [DE 9-1 at 60].

Court ("EOIR"). Simply receiving the form does not mean a court case has started until that filing occurs. Here, Rodriguez's Form I-862 was filed and the proceedings commenced. [DE 1 at 1 (stating that Rodriguez is currently "pending removal proceedings")].[6] Also notably, her Form I-862 has not been revoked or terminated by an order of the Immigration Judge, which would be necessary before issuance of a Form I-860 placing her in expedited removal proceedings. For all these reasons, the text of the title indicates that § 1225 governs "arriving" noncitizens, while § 1226 focuses on the apprehension and detention of those noncitizens already in the country.

The statutory scheme provides context, too. In *Jennings*, the Supreme Court stated that Section 1226 is the "default rule" and "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 288; 301; *see also*, *Castañon-Nava v. Dep't of Homeland Sec.,* ___ F. 4th ___, 2025 WL 3552514, at *9 (7th Cir. Dec. 11, 2025) ("the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law.") The inclusion of a "default" right after a more limited and narrow statute is "likely no coincidence." *Pizarro Reyes*, 2025 WL 2609425, at *5. It is "consonant with the core logic of our immigration system" that different statutory schemes would apply to non-citizens arriving at the border compared to non-citizens already within the country. *Martinez v. Hyde,* 792 F. Supp. 3d 211, 222 (D. Mass 2025).

---

[6] If an I-862 has already been filed with the court, the government must first terminate the immigration court's jurisdiction through motion to terminate signed by the immigration judge. 8 C.F.R. § 1239.2; 8 C.F.R. § 239.2; 8 C.F.R. § 1003.1(m). Once this order is issued, the individual is no longer in "regular" removal proceedings and reverts to DHS custody for processing. *See* 8 C.F.R. § 1239.2; 8 C.F.R. § 1003.1(m). *See Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *7 (N.D. Cal. Sept. 12, 2025) (stating that "[t]he Government concedes that Ms. Salcedo Aceros is currently in full removal proceedings under Section 1229, and that while those proceedings are live, she cannot be simultaneously subjected to Section 1225(b)(1)'s expedited removal proceedings"); *see also*, *Munoz Materano*, v. *Arteta*, 2025 WL 2630826, at *11 (S.D.N.Y. Sept. 12, 2025) ("Respondents therefore expressly concede that, while Munoz Materano's appeal is pending, he remains in Section 240 removal proceedings subject to § 1229a, not expedited removal pursuant to § 1225(b)(1).").

The statutory scheme regarding arrest warrants provides clarity, as well. Section 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested" pending removal. Section 1226's implementing regulations further expand on this topic. 8 C.F.R. § 236.1 is titled "Apprehension, custody, and detention" and specifically § 236.1 is subtitled "Warrant of Arrest." It states that "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1). As a result, Section 1226 focuses on individuals *already* in the United States who are found to be removable, and a Form I-200 administrative warrant is issued for their arrest.

This is contrast to Section 1225 and its implementing regulation, 8 C.F.R. § 235.  Under Section 1225, noncitizens are not arrested pursuant to a warrant. They are detained upon arrival and are not permitted to enter the United States. This detention is a statutory function of the inspection process and not an arrest pursuant to administrative warrant.  This again supports the overall notion that different statutory schemes would apply to different groups of non-citizens. *Martinez,* 792 F. Supp. 3d at 222. Thus, Section 1225 is for arriving individuals "seeking admission" at the border and do not need to be arrested. Section 1226 is for noncitizens already present in the United States. *Castañon-Nava,* ___ F. 4th ___, 2025 WL 3552514 at *9 ("[p]ut another way, 'U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)'" (alterations in original) (quoting *Jennings*, 583 U.S. at 289)).

Finally, the Laken Riley Act amendments to Section 1226 also support this distinction. "When Congress acts to amend a statute, we presume it intends its amendment to have real and

substantial effect." *Stone v. I.N.S.,* 514 U.S. 386, 397 (1995). The Laken Riley Act added new mandatory detention provisions to an otherwise discretionary statute. Now, in Section 1226(c), the Attorney General must detain a noncitizen if (i) the noncitizen is inadmissible because they are in the United States without being admitted or paroled, obtained documents for admission through misrepresentation or fraud, or lacks valid documentation, or, "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." Section 1226(c)(1)(E)(i)-(ii).If Section 1225(b)(2)(A) governed certain noncitizens as the United States claims it does, the Laken Riley Act would have been redundant and unnecessary. That's "because an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted,' ICE would never need to rely on § 1226(c)(1)(E) to detain them." *Pizarro Reyes,* 2025 WL 2609425, at *5 (quoting Section 1225(b)(2)(A)). And further, "[courts] do not lightly assume Congress adopts two separate clauses in the same law to perform the same work." *United States v. Taylor*, 596 U.S. 845, 857 (2022). Reading the statutes otherwise would result in "two separate clauses" performing the "same work." "Considering that § 1182(a)(6)(A)(i) specifically refers to aliens 'present in the United States without being admitted or paroled,' and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well." *Pizarro Reyes,* 2025 WL 2609425, at *5.

In sum, based upon the statutory context and relationship between Section 1225 and Section 1226, and most importantly the text, the Court finds it difficult to read a noncitizen who is

"seeking admission" when the individual never attempted to "seek" admission pursuant to Section 1225(b)(2)(A). This is true, even if the noncitizen may be an "applicant for admission" pursuant to Section 1225(a)(1). That has no bearing on whether she is seeking admission under Section 1225(b)(2)(A). *See, e.g., Del Villar v. Noem,* 2025 WL 3231630, at *5 (W.D. Ky. Nov. 19, 2025) (stating that although the Petitioner may be "an applicant for admission" he is "not 'seeking admission' because he has been [present] in the United States.") *see also, Alonso v. Tindall,* 2025 WL 3083920, at *5 (W.D. Ky. Nov. 4, 2025) (holding that even though "Alonso is thus an 'applicant for admission' he is not 'seeking admission'" and Section 1225(b)(2)(A) does not apply). Recently, the Seventh Circuit, which is the first court of appeals to reach this issue, stated that the United States was "not likely to succeed on the merits of their argument" that Section 1225 governs the arrest of noncitizens *already present* in the United States. *See generally, Castañon-Nava,* ___ F. 4th ___, 2025 WL 3552514 at *9. The Seventh Circuit held that, "while a noncitizen arrested in the Midwest might qualify as 'an alien present in the United States who had not been admitted,' § 1225(a)(1), the mandatory detention provision upon which Defendants rely, limits its scope to an 'applicant for admission' who is 'seeking admission,' § 1225(b)(2)(A)." *Castañon-Nava,* ___ F. 4th ___, 2025 WL 3552514, at *9.

### ii. Plain Language of Section 1225.

Section 1225(a)(1) states that an "applicant for admission" is "an alien present in the United States who has not been admitted or who arrives in the United States." Under § 1225(b)(2) any applicant for admission who is "not clearly and beyond a doubt entitled to be admitted" must be detained. Respondents take the position that all unadmitted and uninspected aliens are "applicants for admission." [DE 9 at 53]. Therefore, the United States asserts that "[i]t therefore follows that an 'applicant for admission' and a person 'seeking admission' are one and the same." [DE 9 at

45-46; 53]. Respondents' interpretation of § 1225(b)(2)(A), therefore, would call for mandatory detention of every noncitizen present in the United States who has not been lawfully admitted. This interpretation is much too broad. *See Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("[A]ccepting Respondents' one size-fits-all application of 1225(b)(2) to all aliens, with no distinctions, would violate fundamental canons of statutory construction."); *Bautista v. Santacruz*, 2025 WL 3289861, at *10 (C.D. Cal. Nov. 20, 2025) ("Respondents' expansive interpretation of 'applicants for admission' would effectively nullify a portion of the INA through the DHS's legislative or interpretive exercise of power.")

Respondents contend that because Rodriguez is an "applicant for admission" who is seeking relief from her removal, she is "properly" detained under 8 U.S.C. § 1225(b)(2)(A). [DE 9 at 54]. But the United States interpretation of Section 1225 ignores or simply reads out the word "seeking" in the phrase "seeking admission." Section 1225(b)(2)(A) states, "[s]ubject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." (emphasis added). The term "seeking admission" is *not* defined in the statute. Seeking means "to go in search of" and is synonymous with "pursue." *Seeking*, WEBSTER'S DICTIONARY (11th ed. 2024). Other courts have stated that seeking "implies action." *Lopez-Campos*, 2025 WL 2496379, at *6. And it is "Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' to 'an alien present in the United States who has not been admitted or who arrives in the United States.'" *Castañon-Nava*, ___ F. 4th ___, 2025 WL 3552514, at *9 (quoting Section 1225(a)(1)).

Also, courts are instructed to presume that Congress would *not* add redundancy to statutes. *Gustafson v. Alloyd Co.,* 513 U.S. 561, 574 (1995) ("the [Supreme] Court will avoid a reading which renders some words altogether redundant.") And even if they did, Courts must give effect to every word in the statute. *Corley v. United States*, 556 U.S. 303, 314 (2009). That is, courts must construe statutes as written even if "Congress could have expressed itself more clearly." *Torres v. Lynch*, 578 U.S. 452, 472 (2016). Reading the statute *as the United States* contends would either ignore the plain meaning of "seeking" (which implies a present tense action, *Seeking*, WEBSTER'S DICTIONARY (11th ed. 2024)) or, more simply, readout "seeking" directly from the statute. But this Court will not ignore words within a statute. This would be expressly against the "cardinal principal" of reading and interpreting every word in a statute. *Corley*, 556 U.S. at 314; *Castañon-Nava*, ___ F. 4th ___, 2025 WL 3552514, at *9 (holding that "Defendants' construction would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous" violating one of the cardinal rules of statutory construction"); *Villa v. Normand,* 2025 WL 3188406, at *7 (S.D. Ga. Nov. 14, 2025) (stating that *Rojas v. Olson*, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025) erred in their decision because, for one reason, they "gave little attention to the meaning of the term 'seeking'"). And because "seeking admission" is not defined in the statute compared to other terms, such as "admission," or "applicant for admission" it is this Courts' duty to interpret every word in the statute. *Corley*, 556 U.S. at 314; *Castañon-Nava,* 2025 WL 3552514, at *9 (stating that Congress "could easily have included noncitizens who are 'seeking admission' within the definition [of Applicant for Admission] but elected not to do so.").

This reading is further supported by the implementing regulations for Section 1225 set forth in 8 C.F.R. § 235, titled "Inspection of Persons Applying for Admission." 8 C.F.R. § 235.1, subtitled "Scope of examination" specifically states that

(a) **General.** Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection, or as otherwise designated in this section.

(b) **U.S. Citizens.** A person claiming U.S. citizenship must establish that fact to the examining officer's satisfaction and must present a U.S. passport or alternative documentation as required by 22 CFR part 53. If such applicant for admission fails to satisfy the examining immigration officer that he or she is a U.S. citizen, he or she shall thereafter be inspected as an alien. . .

…

(f) **Alien applicants for admission.**

(1) Each alien seeking admission at a United States port-of-entry must present whatever documents are required and must establish to the satisfaction of the inspecting officer that the alien is not subject to removal under the immigration laws, Executive Orders, or Presidential Proclamations, and is entitled, under all of the applicable provisions of the immigration laws and this chapter, to enter the United States.

The regulations make clear that if any of the categories of individuals examined on arrival provide the appropriate documentations then they are either admitted and issued a "Form I-94 as evidence of the terms of admission," or "[a]ny alien paroled into the United States under section 212(d)(5) of the Act, including any alien crewmember, shall be issued a completely executed Form I-94, endorsed with the parole stamp." 8 C.F.R. § 235.1(h)(1)-(2).

If, however, the individual does not present the appropriate documents for examination, and therefore is not admitted or paroled, then they are subject to expedited removal.

(2) An alien present in the United States who has not been admitted or paroled or an alien who seeks entry at other than an open, designated port-of-entry, except as otherwise permitted in this section, is subject to the provisions of section 212(a) of the Act and to removal under section 235(b) or 240 of the Act.

8 C.F.R. § 235.1(f)(2). Expedited Removal is set forth in 8 C.F.R. § 235.3, titled "Inadmissible aliens and expedited removal." This subsection specifically states that detention is appropriate prior to inspection on any vessel or aircraft that arrives in the United States and that expedited removal applies to any arriving alien and

[a]s specifically designated by the Commissioner, aliens who arrive in, attempt to enter, or have entered the United States without having been admitted or paroled

> *following inspection by an immigration officer at a designated port-of-entry*, and who have not established to the satisfaction of the immigration officer that they have been physically present in the United States continuously for the 2-year period immediately prior to the date of determination of inadmissibility.

8 C.F.R. § 235.3(a)-(b)(emphasis added).  As such, the regulation makes clear that detention and expedited removal under Section 1225 is for arriving aliens or those who have not been "physically present in the United States continuously for the 2-year period immediately prior to the date of determination of inadmissibility." 8 C.F.R. § 235.3(b)(1)(ii). Rodriguez does not fit within either category as there does not seem to be any question that she has been present in the United States for two years or more.

### iii.   Plain Language of Section 1226

Section § 1226 as titled controls the "apprehension and detention of aliens." Section 1226(a) permits a bond hearing if an "alien" who was "arrested and detained" on a "warrant issued by the Attorney General" is "pending a decision on whether the alien is to be removed from the United States." The plain meaning of the statute is clearly applicable to Rodriguez—an "alien," who was arrested and detained by ICE, and is currently pending removal proceedings. The Notice to Appear, issued by DHS, checked the box titled "You are an alien *present* in the United States who has not been admitted or paroled" rather than checking the box labeled "*arriving* alien." [DE 9-1 at 60 (emphasis added)]. "This supports this Court's conclusion, and reaffirms the Supreme Court's determination in *Jennings v. Rodriguez*, that § 1226(a) applies to aliens already present in the United States, while § 1225(b)(2)(A) applies to arriving aliens. The Respondent's new post hoc position is simply 'impermissible.'" *Roman v. Olson,* No. CV 25-169-DLB-CJS, 2025 WL 3268403, at *4 (E.D. Ky. Nov. 24, 2025) (citation omitted) (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 591 U.S. 1, 22 (2020) (holding that "[t]he basic rule is clear: [a]n

agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations.")).

### iv.   Current Contrary Case Law

The United States cites to several nonbinding district courts, and one BIA decision, to support their interpretation.[7] However, the Court is not persuaded by these decisions for the reasons previously explained in *Edahi*, 2025 WL 3466682, at *9–13, incorporated here by reference.

### v.   Class Certification

Recently, the Central District of California granted Class Certification to a group of Petitioners in *Bautista v. Santacruz*, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). There, the court certified "The Bond Eligible Class" defined as "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Id.* at *9. Courts have started to interpret and apply the Class Certification in different ways. *See Aranda v. Olson*, 2025 WL 3499061, at *8 n. 2 (W.D. Ky. Dec. 5, 2025) (stating that "it is unnecessary to address the impact of the [Class Certification] in ruling on the pending Petition); *but see Rodriguez v. Larose*, 2025 WL 3456475, at *5 n. 4 (S.D. Cal. Dec. 2, 2025 (holding that "[f]or the reasons discussed in this Order" in granting the writ of habeas corpus, "Petitioner is a member of this class and entitled to the same relief.")

---

[7] None of cases cited by the United States are controlling authority within the Sixth Circuit. Further, the BIA is neither binding, nor should be viewed as persuasive authority, on any district court. See *Loper Bright Enter.*, 603 U.S. at 413 ("courts. . .  may not defer to an agency interpretation of the law simply because a statute is ambiguous") (emphasis added).

Originally, when the Central District of California granted Class Certification it refrained from entering a final judgment. *See Bautista*, 2025 WL 3288403, at \*9. Instead, the court set a status conference and ordered the parties to file a joint report on how to "proceed with [the] matter." *Id.* Because of that, courts have found that the Class Certification does not "dictate [] [current] proceedings." *Serrano v. McDonald*, 2025 WL 3296037, at \*1 (D. Mass. Nov. 26, 2025).

But on a motion for reconsideration, the Central District of California changed course. Upon the motion, the court found "it appropriate to enter final judgment as to the claims encompassed within the MSJ Order." *Bautista v. Santacruz*, 2025 WL 3713982, at \*6 (C.D. Cal. Dec. 18, 2025). The court stated that entering a final judgement was appropriate because it would help aid in the "expeditious" manner of the case, and due to "new facts" that "indicate Respondents. . . noncompliance with the Court's orders." *Id.*

Although noteworthy, it is still not necessary for this Court to adopt the position of the Central District of California. For now, the Court "rests its decision" on the independent merits of Rodriguez's petition without relying on *Bautista*. *Santuario v. Bondi*, 2025 WL 3469577, at \*2 n.4 (D. Minn. Dec. 2, 2025).

\* \* \*

For the reasons above, Rodriguez, who has been present in the United States for more than 2 years, is not "seeking admission" into the United States, a fact acknowledged in her notice for appearance by the checking of the box for "present" and not for "arriving," as well as her arrest pursuant to the I-200 warrant which authority arises out of Section 1226. Section 1226, not Section 1225, applies to her detention.

### B. Lawfulness of Current Detention

As stated, Rodriguez is detained under Section 1226. However, the United States contends that because Rodriguez is properly detained under Section 1225, not Section 1226, she has been afforded all the due process that is owed to her. [DE 9 at 56]. Otherwise, the United States does not respond to Rodriguez's alleged violation of due process. Because the Court found that Rodriguez's detention is guided by Section 1226, the Court must determine whether the continued detention pursuant to Section 1226 is in violation of her Due Process.

The Due Process Clause extends to all persons regardless of status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). This includes non-citizens. *Id.* To determine whether a civil detention violates a detainee's due process rights, courts within the Sixth Circuit apply the three-part balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335.

#### 1.    Private Interest

It is undisputed Rodriguez has a significant private interest in not being detained. One of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Courts can also consider the detainee's condition of confinement. *Martinez v. Noem*, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025).

This is to determine if the conditions are indistinguishable from criminal incarceration. *Id.* Rodriguez has been separated from her partner since detention. [DE 1 at 13]. She has also been prevented from attending work and further participating in her community. [*Id.*].

When ICE has initial discretion to detain or release a noncitizen pending removal proceedings, after the initial release, "the petitioner has a protected liberty interest in remaining out of custody." *Hernandez Nieves v. Kaiser*, 2025 WL 2533110, at *4 (N.D. Cal. Sep. 3, 2025). Due process then "requires a hearing before an [IJ] before re-detention." *Id.* Upon arrival into the United States, Rodriguez was paroled into the country. [DE 1 at 1]. She was placed under certain conditions and instructions. [*Id.* at 4-5]. She also previously obtained Temporary Protected Status. [*Id.*]. As a result, the first *Matthews* factor favors Rodriguez's position.

###    2.    Risk of Error

The second factor concerns the risk of the erroneous deprivation of Rodriguez's liberty. A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that "re-detention without any individualized assessment" establishes a "high risk of erroneous deprivation" of a protected liberty interest). As of today, Rodriguez has not had a merits bond hearing, with counsel and evidence. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that Due process requires at a minimum the opportunity for the petitioner to submit evidence and be heard). Respondents have not demonstrated that Petitioner is a flight risk or a danger to the community. In fact, she has appeared for all immigration related appointments. [DE 1 at 4-5]. The United States has not put forth any facts or evidence to demonstrate that Rodriguez has any criminal or civil infractions. Further, Rodriguez was previously granted Temporary Granted Status by this Administration just earlier this year. [DE 9 at 40]; *see also* 8 C.F.R. § 244.2. This is a

discretionary decision by USCIS, a division of the DHS. 8 C.F.R. § 244.10(b). Thus, because of a high, if not already evident, risk of erroneous deprivation Rodriguez's liberty interest, the second *Matthews* factor favors Rodriguez.

### 3. United States' Interest

The final *Matthews* factor concerns the Unites States' interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. The Court recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings. *Sampiao*, 2025 WL 2607924, at *12. However, a "routine bond hearing" before an IJ presently "minimal" burdens to the United States." *Hyppolite v. Noem,* 2025 WL 2829511, at *15 (E.D. N.Y. Oct. 6, 2025). These procedures are also already in place. *Id.* Therefore, "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydin v. Trump*, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025). Because of that, the Court finds that the third *Matthews* factor also favors Rodriguez.

\* \* \*

Therefore, the Court finds that all three *Matthews* factors favor Rodriguez. The current detention of Rodriguez is in violation of the Due Process Clause and the INA.

## V.    Remedy

Numerous courts across the country have ordered the release of individuals stemming from ICE's illegal detention. *Patel*, 2025 WL 2823607, at *6; *Beltran Barrera*, 2025 WL 2690565, at *7; *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). The Supreme Court has also recognized that "Habeas has traditionally been a means to secure *release* from unlawful detention."

*Thuraissigiam*, 591 U.S. at 107 (emphasis in original). This Court is releasing Rodriguez because of the "unlawful detention" by ICE and the United States for the reasons stated above. Rodriguez is not being released because she is detained pursuant to Section 1226. But instead, the Court is ordering her release because of the United States' illegal actions *it undertook* in Rodriguez's detention. *Hyppolite,* 2025 WL 2829511 *16 (holding that the United States cannot "detain [Petitioner] without first conducting a hearing before an IJ" because of the unlawful detention of Petitioner).

As a result of her release stemming from the "unlawful detention" in violation of her due process rights, and *further* pursuant to Section 1226 and its supporting regulations, Petitioner must be provided with a bond hearing on the merits before a neutral IJ prior to any redetention. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Also, courts across the country have routinely held this procedure proper. *Alonso*, 2025 WL 3083920, at *9; *Lopez-Campos,* 2025 WL 2496379, at *9-10; *Mboup v. Field Office Director of N.J.*, 2025 WL 3062791, at *2 (D.N.J. Nov. 3, 2025); *Espinoza*, 2025 WL 2675785, at *11; *Ramirez Clavijo*, 2025 WL 2419263, at *6; *Munoz Materano*, 2025 WL 2630826, at *20.

Rodriguez's procedural due process rights are not violated by the very fact she is detained. "Rather, [Petitioner's rights] are violated because he has been detained without a hearing that accords with due process." *Lopez-Arevelo v. Ripa*, 2025 WL 2691828, *11 (W.D. Tex. Sep. 22, 2025) (citing to *Black v. Decker*, 103 F.4th 133, 149-150 (2d Cir. 2024)). Therefore, "the proper remedy" is the "full process due under [Section 1226] which includes a bond hearing before an [IJ]." *Maldanado,* 2025 WL 2968042, at *9-10; *Morales-Martinez v. Raycraft*, 2025 WL 3124695, at *7 (E.D. Mich. Nov. 7, 2025) (holding that because Petitioner had been detained "without a . . . hearing, he is in federal custody in violation of federal law.")

Because Rodriguez is being detained pursuant to Section 1226, relevant regulations entitle her to a neutral bond hearing. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Therefore, to afford Rodriguez with the "full [due] process" under Section 1226, the United States must provide Rodriguez with a neutral bond hearing before an IJ. *Maldanado,* 2025 WL 2968042, at *9-10.

## VI.    Conclusion

For the reasons stated above, the United States has violated Rodriguez's due process rights. The Court **GRANTS** Rodriguez's Petition for Writ of Habeas Corpus [DE 1] and orders the following:

I.    The United States is directed to release Petitioner Rodriguez because of the unlawful detention in violation of her due process rights.

II.    The United States must provide her with a bond hearing before a neutral IJ pursuant to Section 1226.

III.    The United States must certify compliance with the Court's order by a filing on the docket **immediately.**

Rebecca Grady Jennings, District Judge

United States District Court

January 6, 2026

25